```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X
CARLO DONATO,

                    Petitioner,         MEMORANDUM & ORDER
                                        06-CV-5287(JS)
         -against-

UNITED STATES OF AMERICA,

                    Respondent.
----------------------------------x
APPEARANCES
For Petitioner:     Carlo Donato, pro se
                    #45257-053
                    U.S. Penitentiary at Allenwood
                    PO Box 3000
                    White Deer, PA 17887

For Respondent:     Allen Lee Bode, Esq.
                    United States Attorneys Office
                    Eastern District of New York
                    610 Federal Plaza
                    Central Islip, NY 11722
```

SEYBERT, District Judge:

Carlo Donato ("Petitioner") petitions this Court pro se for a writ of habeas corpus pursuant to 28 U.S.C. § 2255.[1]

BACKGROUND

Petitioner was arrested on February 15, 1995, pursuant to a warrant, after a year-long joint investigation by the FBI, New York Police Department, and Nassau County Police Department. (See Pet. ¶ 2, Docket Entry 1; see also Respondent's Appellate Brief ("Resp't's App. Br."), available at 1996 WL 34422555 at 3.) This

---

[1] The Petition originally requested relief under 28 U.S.C. § 2241. The Court subsequently converted the Petition to a § 2255 Petition. (See Jan. 8, 2010 Memorandum & Order, Docket Entry 15.

investigation regarded "a series of armed carjackings that had occurred in Nassau County during 1993 and 1994." (Resp't's App. Br. at 3.) At Petitioner's trial, "[t]he government presented 22 witnesses including the seven victims of the carjackings . . . three eyewitnesses, an informant, several law enforcement officials[,] and automobile executives." (Resp't's App. Br. At 4.)

On May 29, 1996, at the conclusion of a jury trial, Petitioner was found guilty of: (1) one count of Conspiracy to Commit Carjacking, in violation of 18 U.S.C. § 371; (2) six counts of Carjacking, in violation of 18 U.S.C. § 2119; and (3) six counts of Use of a Firearm during the Commission of a Crime of Violence, in violation of 18 U.S.C. § 924(c). (See Resp't's App. Br. at 1.) Petitioner was sentenced to 119 years incarceration and three years of supervised release, fined in the amount of $175,000, and ordered to pay restitution in the amount of $295,807.25. (See Resp't's App. at 1.) Petitioner appealed the conviction to the Second Circuit Court of Appeals, which, on April 23, 1997, affirmed the judgment. See United States v. Donato, 112 F.3d 506 (2d Cir. 1997).

On March 28, 1998, Petitioner filed a Petition for a Writ of Habeas Corpus (the "1998 Petition") pursuant to 28 U.S.C. § 2255. (See Pet. at 3-4.) The Second Circuit denied Petitioner's ineffective assistance of counsel claims and remanded the case to the District Court for resentencing based on a possible sentence

calculation error. Donato v. United States, 208 F.3d 202 (2d Cir. 2000).

After Petitioner's sentence was recalculated,[2] the Court resentenced Petitioner to 115 years incarceration, three years of supervised release, fined in the amount of $175,000, and ordered to pay restitution in the amount of $295,807.25. (See Am. J., No. 95-CR-0223, Docket Entry 106.) Petitioner again appealed the Court's resentence. The Second Circuit affirmed the District Court's judgment, but remanded the case solely for purposes of either amending the fine to fit within the Sentencing Guidelines range or imposing a fine above the Guidelines range with an explanation for the departure. See United States v. Quintieri, 306 F.3d 1217 (2d Cir. 2002). On July 6, 2005, the District Court vacated the fine originally imposed and denied Petitioner's application to reopen his entire sentence. (See Am. J., No. 95-CR-0223, Docket Entries 126, 131.) Petitioner appealed the judgment, which the Second Circuit affirmed. (See Mandate, No. 95-CR-0223, Docket Entry 132.)

On September 27, 2006, Petitioner filed the present Petition. Petitioner asserts the following grounds: (1) Petitioner was denied his due process rights and his right to effective assistance of counsel as to an interpreter; (2) Petitioner was denied his due process and effective assistance of counsel rights when he was resentenced while overly-medicated at his December 1,

---

[2] Petitioner's offense level was reduced from 32 to 29.

3

2000 resentencing; and (3) the evidence was legally insufficient to convict him. (See Pet. at 11-18.) On February 11, 2010, the Court denied Petitioner's "overly-medicated" claim. (See Feb. 11, 2010 Memorandum & Order, Docket Entry 17.) On November 22, 2013, Petitioner filed a motion to amend, which added a claim of actual innocence. (See Am. Br. at 8, Docket Entry 22-1.) The Court granted that motion. (See March 10, 2014 Memorandum & Order, Docket Entry 24.)

DISCUSSION

The Court will first address the applicable legal standard before turning to the merits of the Petition.

I. Legal Standard

"The writ of habeas corpus stands as a safeguard against imprisonment of those held in violation of the law." Harrington v. Richter, --- U.S. ----, 131 S. Ct. 770, 780, 178 L. Ed. 2d 624 (2011).

> A prisoner in custody under sentence of a [federal] court . . . claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States . . . may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255(a).

> If the court finds . . . that there has been such a denial or infringement of the constitutional rights of the prisoner . . . the court shall vacate and set the judgment aside and shall discharge the prisoner or

> resentence him or grant a new trial or correct
> the sentence as may appear appropriate.

Id. at § 2255(b).

The United States Supreme Court has held that "to obtain collateral relief a prisoner must clear a significantly higher hurdle than would exist on direct appeal." United States v. Frady, 456 U.S. 152, 166, 102 S. Ct. 1584, 1593, 71 L. Ed. 2d 816 (1982). "Habeas corpus, it is well known, 'is not a neutral proceeding in which the petitioner and the State stand on an equal footing. Rather, it is an asymmetrical enterprise in which a prisoner seeks to overturn a presumptively valid judgment.'" Skaftouros v. United States, 667 F.3d 144, 158 (2d Cir. 2011) (quoting Pinkney v. Keane, 920 F.2d 1090, 1094 (2d Cir. 1990)). Petitioner has the burden of proving his claims by a preponderance of the evidence. Id. (citing Parke v. Raley, 506 U.S. 20, 31, 113 S. Ct. 517, 524, 121 L. Ed. 2d 391 (1992); Walker v. Johnston, 312 U.S. 275, 286, 61 S. Ct. 574, 579, 85 L. Ed. 830 (1941)).

"The Court's discretion to grant relief under section 2255 is to be exercised sparingly, for such applications are in tension with society's strong interest in the finality of criminal convictions." Castro v. United States, --- F. Supp. 2d ----, at *4 (E.D.N.Y. Jan. 29, 2014) (quoting Elize v. United States, No. 02-CV-1350, 2008 WL 4425286, at *5 (E.D.N.Y. Sept. 30, 2008); citing Brecht v. Abrahamson, 507 U.S. 619, 633–34, 113 S. Ct. 1710, 1719,

5

123 L. Ed. 2d 353 (1993) (internal quotation marks and citations omitted)).

The Supreme Court has held, additionally, that, as a general rule, "claims not raised on direct appeal may not be raised on collateral review unless the petitioner shows cause and prejudice." Massaro v. United States, 538 U.S. 500, 504, 123 S. Ct. 1690, 1693, 155 L. Ed. 2d 714 (2003) (citing Frady, 456 U.S. at 167-68, 102 S. Ct. 1594; Bousley v. United States, 523 U.S. 614, 621-22, 118 S. Ct. 1604, 140 L. Ed. 2d 828 (1998)). The Supreme Court has held, however, that ineffective assistance of counsel claims may be "brought in the first instance in a timely motion in the district court under § 2255;2445;2445 . . . whether or not the petitioner could have raised the claim on direct appeal." Id.

II. Ground One: Language Interpreter

Petitioner first asserts that he was denied due process and effective assistance of counsel because he was not provided an interpreter.

A. Language Interpreter Standard

"[I]n defending against criminat prosecution, accused defendants have a constitutional right to be provided with the services of an interpreter." Abdullah v. Immigration and Naturalization Serv., 184 F.3d 158, 164 (2d Cir. 1999) (citing United States ex. Rel. Negron v. New York, 434 F.2d 386, 390-91 (2d Cir. 1970)).

B. <u>Due Process Standard</u>

"The due process clause 'prohibits trying [a] criminal defendant . . . who [is] hampered by [his] inability to communicate in the English language.'" <u>Benjamin v. Greiner</u>, 296 F. Supp. 2d 321, 333 (E.D.N.Y. 2003) (quoting <u>United States v. Mosquera</u>, 816 F. Supp. 168, 173 (E.D.N.Y. 1993)).

C. <u>Analysis</u>

Petitioner did not raise this issue on direct appeal. Petitioner must demonstrate, therefore, "cause and prejudice" as to why he did not raise it in his direct appeal. <u>See</u> <u>Massaro</u>, 538 U.S. at 504, 123 S. Ct. at 1693. Petitioner argues that he did not know he had the right to an interpreter. (<u>See</u> Pet'r's Am. Br. at iii (regarding his trial, ". . . defense attorney [failed to] inform [Petitioner] of this right, or inform the court [that Petitioner needed an interpreter."))  If true, in the interests of justice, the Court might hold, <u>arguendo</u>, that Petitioner has shown cause.  As noted <u>infra</u>, however, Petitioner raised the interpreter issue in his 1998 habeas petition as to his claim of ineffective assistance of counsel.  Petitioner did not raise a due process claim.  As Petitioner has know about his interpreter rights since at least 1998, Petitioner fails to show cause why he did not raise the issue at that time.  Moreover, as held <u>infra</u>, Petitioner would be unable to prove prejudice.  Therefore, Petitioner's claim as to this ground is DENIED.

7

D. <u>Ground Two: Ineffective Assistance of Counsel Standard</u>

"It has long been recognized that the right to counsel is the right to the effective assistance of counsel." <u>McMann v. Richardson</u>, 397 U.S. 759, 771 n.14, 90 S. Ct. 1441, 1449, 25 L. Ed. 2d 763 (1970) (citing <u>Reece v. Georgia</u>, 350 U.S. 85, 90, 76 S. Ct. 167, 170, 100 L. Ed. 77 (1955); <u>Glasser v. United States</u>, 315 U.S. 60, 69-70, 62 S. Ct. 457, 464-65, 86 L. Ed. 680 (1942); <u>Avery v. Alabama</u>, 308 U.S. 444, 446, 60 S. Ct. 321, 322, 84 L. Ed. 377 (1940); <u>Powell v. Alabama</u>, 287 U.S. 45, 57, 53 S. Ct. 55, 59-60, 77 L. Ed. 158 (1932)).

In <u>Strickland v. Washington</u>, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the Supreme Court established a two-part test to determine whether counsel's assistance was ineffective. <u>First</u>, "[Petitioner} must show that counsel's representation fell below an objective standard of reasonableness." <u>Id.</u> at 688. To establish the first prong of the <u>Strickland</u> test, Petitioner must overcome the strong presumption that the challenged action was sound trial strategy under the circumstances at the time. See <u>id.</u> at 689 ("[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, [Petitioner] must overcome the presumption that, under the circumstances, the challenged action might be considered sound [ ] strategy." (internal quotation marks and citation omitted)). <u>Second</u>, Petitioner must show that

8

counsel's performance prejudiced his defense; "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694 (noting "[a] reasonable probability is a probability sufficient to undermine confidence in the outcome").

E. Analysis

Before the Court may reach a conclusion as to the ineffective assistance of counsel claim, the Court must determine whether Petitioner established his need for an interpreter during his time in court and whether trial counsel violated Petitioner's right to an interpreter.[3]

Notably, the District Court denied this claim in Petitioner's 1998 Petition by holding that Petitioner had a good command of the English language. See, e.g., Donato, 208 F.3d at 1. The Court concurs.

At trial, the District Court concluded that Petitioner did not need an interpreter. At Petitioner's plea hearing,[4] Petitioner answered all of the Court's questions in English. Besides answering "yes" and "no" (which illustrates an ability to distinguish words in English), Petitioner answered a question

---

[3] Logically, trial counsel could not have been Constitutionally-ineffective if the underlying issue was not Constitutionally-problematic.

[4] Petitioner pleaded guilty, then later withdrew his plea and the case went to trial.

9

regarding whether a gun was loaded: "No, the weapon was not loaded." (See Resp't's 1999 Habeas Br. at 17-18, available at 1999 WL 33630719.) The District Court noted that Petitioner provided information to the Probation Department (for his Pre-Sentencing Report ("PSR")) in English. (See Resp't's 1999 Habeas Br. at 18.) The District Court further noted that Petitioner had been in the United States for many years and had gone to college and opened his own consulting and construction company in 1988--seven years before he was arrested. (See Resp't's 1999 Habeas Br. at 5 (quoting PSR ¶ 151).) Furthermore, Petitioner spoke to the FBI in English after his arrest (See Resp't's 1999 Habeas Br. at 18) and "furnished information relating to his personal history; he earlier also provided handwritten notes in English." (Resp't's 1999 Habeas Br. at 18 (citing PSR ¶¶ 136-38, 142, 149-53, 167-69).)

At trial, Petitioner stood up when, during his opening statement, Petitioner's counsel told him to do so. (See Resp't's 1999 Habeas Br. at 18.) Before a witness took the stand, Petitioner's counsel asked the Court for an opportunity to speak to his client, which he presumably did in English. (See Resp't's 1999 Habeas Br. at 18-19 (noting that there is nothing to suggest that counsel spoke Italian).) Petitioner informed the U.S. Marshal, in English, that he needed to use the restroom. (See Resp't's 1999 Habeas Br. at 19.) Finally, when the District Court advised Petitioner of his appellate rights, Petitioner "replied without any

10

indication of difficulty." (See Resp't's 1999 Habeas Br. at 19.) Besides these examples, there is no evidence Petitioner ever asked for an interpreter.

The Court concurs with the trial court's holding that Petitioner did not need an interpreter. Petitioner, therefore, was not denied effective assistance of counsel and this claim is DENIED.

III. Ground Three: Actual Innocence, Sufficiency of Evidence

Petitioner's next claim appears to be three-fold: (1) he was actually innocent of the crime, (2) the trial evidence was legally insufficient to convict him, and (3) but for the ineffective assistance of counsel, he would have been able to demonstrate his innocence to the jury.

A. Actual Innocence Standard

"To establish actual innocence, petitioner must demonstrate that, in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." Bousley, 523 U.S. at 623 (quoting Schlup v. Delo, 513 U.S. 298, 327-28, 115 S. Ct. 851, 867-68, 130 L. Ed. 2d 808 (1995)) (internal quotation marks omitted). "It is important to note in this regard that 'actual innocence' means factual innocence, not mere legal insufficiency." Id. at 623-24 (citing Sayer v. Whitley, 505 U.S. 333, 339, 112 S. Ct. 2514, 2518-19, 120 L. Ed. 2d 269 (1992)).

B.  Sufficiency of Evidence Standard

"A [petitioner] raising a sufficiency challenge [ ] bears a heavy burden because a reviewing court must consider the evidence 'in the light most favorable to the [Respondent]' and uphold the conviction if '<u>any</u> rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" <u>United States v. Aguilar</u>, 585 F.3d 652, 656 (2d Cir. 2009) (quoting <u>Jackson v. Virginia</u>, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979); citing <u>United States v. Jones</u>, 531 F.3d 163, 168 (2d Cir. 1008)) (emphasis in original).

C.  Right to Testify Standard

> The decision whether a defendant should testify at trial is for the defendant to make, that trial counsel's duty of effective assistance includes the responsibility to advise the defendant concerning the exercise of this constitutional right, and that the two-part test established in <u>Strickland</u> [ ], should be used to assess a defendant's claim that defense counsel rendered ineffective assistance by preventing him from testifying or at least failing to advise him concerning his right to testify.

<u>Brown v. Artuz</u>, 124 F.3d 73, 74 (2d Cir. 1997).

D.  Analysis

1.  Actual Innocence, Sufficiency of Evidence

The Court refers to the Second Circuit's analysis of Petitioner's direct appeal in 1997.

> The government presented evidence of seven separate carjackings of Mercedes Benz or BMW

12

> vehicles in suburban Long Island, all carried out at gunpoint. . . .
>
> For each of the carjackings, the government, in addition to other evidence, presented identification evidence consisting primarily of the victims', and in some cases, eye witnesses', identification of Donato in a photospread. Some of the victims also identified Donato in the courtroom gallery. . . .
>
> Although the evidence relating to the identifications was stronger for some counts than others-indeed the carjacking count on which Donato was acquitted related to an incident in which the victim's identification was rather weak-Donato has failed to present any credible evidence of suggestibility in the identification procedures. . . .
>
> Finally, Donato argues that there was insufficient evidence to convict him of the firearm charges. . . . Each of the victims in the trial below testified that the carjacker pulled a gun on them. Lay eyewitness testimony alone is sufficient to sustain a conviction . . . . The evidence was, therefore, not only sufficient but quite powerful.

United States v. Donato, 112 F.3d 506, at 1-2 (internal citations and quotation marks omitted).

Regarding Petitioner's actual innocence claim, as Petitioner failed to meet the burden on direct appeal, Petitioner clearly fails to meet the "significantly higher burden" as to a § 2255 motion. See Frady, 456 U.S. at 166; see also Pinkney, 920 F.2d at 1094 (a § 2255 motion "is an asymmetrical enterprise in which a prisoner seeks to overturn a presumptively valid judgment.") Moreover, Petitioner's evidence of actual innocence

13

regards, entirely, the notion that he speaks English with an Italian accent, while one of the witnesses testified that the carjacker did not have an accent. (See, e.g., Pet'r's Am. Br. at 8.)

As noted by the Second Circuit, supra, the victims and eyewitnesses identified Petitioner as the assailant. For example, Iris Wilkins, a victim, testified that, when shown the photospread, she was 90-percent sure Petitioner was the gunman. (See Resp't's App. Br. at 8-9.) Mr. Kushner, another victim, identified Petitioner as the assailant in a photospread. (See Resp't's App. Br. at 9-10 (citing Trial Tr. 333-36, 359-62[5]).) Kushner also identified Petitioner in Court while Petitioner was seated in the last row of the gallery.[6] (See Resp't's App. Br. at 10 (citing Trial Tr. 336-40, 362-63).) Another victim, Erwin Koch, identified Petitioner in a photospread and in court as Petitioner sat in the gallery. (See Resp't's App. Br. at 11 (citing Trial Tr. 384-85, 411-12).) Mr. Glass identified Petitioner, in a photospread and in court, as the assailant. (See Resp't's App. Br. at 14-15 (citing Trial Tr. 225-27, 276-78, 280-81).) Donna Epstein, a victim, identified Petitioner in a photospread. (See, Resp't's App. Br. at

---

[5] The trial transcript itself was unavailable for this Court's review.

[6] As noted by Respondent, the trial court permitted the use of this in-court identification procedure. (Resp't's App. Br. at 10, n.7.)

14

17-18 (citing Trial Tr. 431-32).) Petitioner's accent argument does not overcome his identification by the eyewitnesses and victims, nor does it meet his burden of proving his claim by a preponderance of the evidence. See Skaftouros, 667 F.3d at 158. Clearly, moreover, "any rational trier of fact could have found the essential elements of the crime[s] beyond a reasonable doubt." Jackson v. Virginia, 443. U.S. at 319.

Furthermore, Petitioner notes that his girlfriend, Serena Plascoff, testified that Petitioner has a "heavy accent." (See Pet'r's Am. Br. at 13.) The evidence about which Petitioner is complaining (his Italian accent) was heard by the jury. Petitioner fails to meet his burden on this claim.

For the foregoing reasons, Petitioner's claim, as to insufficiency of evidence and actual innocense, is DENIED.

2. Ineffective Assistance of Counsel

Petitioner raised this claim in his 1998 Petition. The District Court and the Second Circuit denied the claim. At trial, the record shows Petitioner and his counsel discussed the issue of whether Petitioner should testify.

> [**Counsel**]: . . . I really need some time to talk to my client about it at some length as to what case we'll put on. . . .
>
> [**Counsel**]: . . . I want the Court to understand the reason I'm making the request is I really have to meet with [Petitioner] and have a long discussion with him with regard to the issue to put him on the stand or not. . . .

15

(Resp't's 1999 Habeas Br. 8 (quoting Trial Tr. 817-18).) The next morning, counsel informed the trial court that Petitioner would not testify. (See Resp't's 1999 Habeas Br. 8. (citing Trial Tr. 821).) This is the clearest indication that counsel and Petitioner discussed the issue.

Assuming, arguendo, that counsel failed to notify Petitioner of his right to testify, Petitioner fails to establish the "prejudice" prong of the Strickland test. As the Second Circuit held, "[i]n light of the considerable evidence against [Petitioner]-22 witnesses, including seven carjacking victims, three of whom identified him-we find that his testimony would not have been beneficial to his case." Donato, 208 F.3d at 2. As noted supra, Petitioner argues that if the jury had heard his Italian accent, they would have concluded he could not have been the assailant (because one witness testified the assailant had no accent). (See, e.g., Pet'r's Am. Br. 8.) As noted supra, Petitioner's girlfriend testified as to Petitioner's accent. Since the accent issue was heard by the jury, Petitioner fails to establish how his testimony would have had a reasonable probability of changing the results of the trial. See Strickland, 466 U.S. at 694. Petitioner's claim in this regard is, therefore, DENIED.

IV. Petitioner's Rosemond v. United States Letter

Finally, on March 26, 2014, Petitioner filed a letter regarding the applicability of the United States Supreme Court

16

decision in <u>Rosemond v. United States</u>, 572 U.S. ----, 134 S. Ct. 1240 (2014). (<u>See</u> <u>Rosemond</u> Letter, Docket Entry 25.) "Petitioner's argument is [that] . . . [as to] the jury instructions in this case, with respect to the conspiracy count, the [trial] court did not instruct the jury with the requirement of '<u>knowing in advance</u>' that the perpetrator and not [Petitioner] was going to use the gun during the crime's commission." (<u>Rosemond</u> Letter at 1 (emphasis in original).)

<u>Rosemond</u> addressed 18 U.S.C. § 2, "the federal aiding and abetting statute." <u>Rosmond</u>, 572 U.S. at *5. The "advance knowledge" requirement, about which Petitioner argues, regards 18 U.S.C. § 2, under which he was not convicted. Petitioner was not convicted of aiding and abetting the crime, but of committing the crimes. <u>Rosemond</u> therefore is inapplicable to the present motion.

[BOTTOM OF PAGE INTENTIONALLY LEFT BLANK]

## CONCLUSION

For the reasons set forth above, Petitioner's application for a writ of habeas corpus pursuant to 28 U.S.C. § 2255 is DENIED. Because there can be no debate among reasonable jurists that Petitioner was entitled to habeas relief, the Court does not issue a Certificate of Appealability. 28 U.S.C. § 2253(c); see also Middleton v. Att'ys Gen., 396 F.3d 207, 209 (2d Cir. 2005).

The Clerk of the Court is directed to mail a copy of this Memorandum and Order to the pro se Petitioner and to mark this matter CLOSED.

SO ORDERED.

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated: May   7  , 2014
       Central Islip, New York